**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

A.G., *et al.*,
Plaintiffs,
v.
UR JADDOU, *Director for USCIS*, and THE UNITED STATES,
Defendants.

Civil Action No.
1:25-cv-01942-SDG

**OPINION AND ORDER**

This case is before the Court on the motion to dismiss filed by Defendant Ur Jaddou, the director of U.S. Citizenship & Immigration Services (USCIS) [ECF 6]. Plaintiffs seek to compel USCIS to take preliminary action on their applications for a special nonimmigrant status, commonly known as a "U Visa," by conducting either: (1) a "bona fide determination" (BFD) that, if granted, might permit Plaintiffs to obtain work authorization and deferred action on removal; or (2) a waitlist determination, which would grant Plaintiffs similar benefits until visas become available to them. Defendants move to dismiss Plaintiffs' claims for lack of subject matter jurisdiction and for failure to state a claim. Because the Court may exercise subject matter jurisdiction over Plaintiffs' claim to compel a waitlist determination (but not a BFD), and the complaint plausibly alleges that Plaintiffs' waitlist determinations have been unreasonably delayed, Defendants' motion is **GRANTED IN PART and DENIED IN PART**.

## I. BACKGROUND

First, some additional details on the U Visa process. A U Visa is a type of nonimmigrant status that grants temporary immigration benefits to noncitizen victims of certain crimes who cooperate with law enforcement investigations of those crimes. 8 U.S.C. § 1101(a)(15)(U). A U Visa lasts four years and grants work authorization to the visa-holder. 8 U.S.C. § 1184(p)(3). The applicant's qualifying family members can also obtain U Visa status. 8 C.F.R. § 214.14(f).

Congress capped the number of U Visas at 10,000 per year. 8 U.S.C. § 1184(p)(2). Because demand for U Visas has far outstripped supply, USCIS created a waiting list process. 8 C.F.R. § 214.14(d)(2); 72 Fed. Reg. 53014-01 (Sept. 17, 2007). If USCIS determines that a U Visa application is approvable, but a visa is not available due to the statutory cap, the applicant is placed on the waitlist. 8 C.F.R. § 214.14(d)(2). Being placed on the waitlist has two main benefits: while the applicant is on the waitlist, the applicant and qualifying family members receive deferred action on their removal from the United States, and USCIS also has the discretion to grant them work authorization. *Id.*

The waitlist process did not solve the backlog of U Visa petitions, though, and instead many applicants waited for placement on the waitlist. In response, USCIS created the BFD process. The enabling statute permits USCIS to grant work authorization to a noncitizen with a "pending, bona fide" U Visa application. 8

U.S.C. § 1184(p)(6). In the BFD process, USCIS makes an initial determination whether a U Visa application is "bona fide," *i.e.*, whether the applicant "compli[ed] with initial evidence requirements and successful completion of background checks."[1] If so, USCIS then determines whether to exercise its discretion to issue a BFD Employment Authorization Document (EAD).[2] If USCIS does grant the BFD EAD, then it will also grant the applicant deferred action on removal.[3] If an applicant is granted a BFD EAD, the applicant generally does not go on the waitlist; the next step is final adjudication of the application, pending the availability of a visa under the statutory cap.[4] Essentially, the BFD EAD gives applicants the benefits of waitlist placement (work authorization and deferred action) without requiring a full adjudication of their applications—recall that waitlist placement is for those whose applications are approvable, except that a visa is not currently available.[5] If an applicant is not granted a BFD EAD, the

---

1 3 USCIS Policy Manual, pt. C, ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 [https://perma.cc/A6BV-ZX3F] (current through Sept. 23, 2026).

2 *Id.*

3 *Id.*

4 3 USCIS Policy Manual, pt. C, ch. 4, Appendix: Bona Fide Determination Process and Administrative Procedure Act Considerations, https://www.uscis.gov/sites/default/files/document/policy-manual-resources/Appendix-BonaFideDeterminationProcessFlowchart.pdf [https://perma.cc/S9VY-V3PB] (last updated Sept. 24, 2026).

5 *See id.*

applicant will still receive consideration for waitlist placement.[6] If the application is not approvable, and therefore not eligible for waitlist placement, the application is denied.[7]

Plaintiffs are citizens of India.[8] In January 2022, A.G. was the victim of a serious crime in Atlanta, Georgia.[9] He then cooperated with DeKalb County law enforcement in the investigation of the crime.[10] Subsequently, in October 2024, A.G. applied for a U Visa, and his wife and daughter applied as qualifying family members.[11] USCIS received Plaintiffs' applications on October 7, 2024, but to date USCIS has not taken any action on their applications.[12] Plaintiffs thus filed their complaint under the Administrative Procedure Act (APA) and the Mandamus Act seeking to compel USCIS to act on their applications.

---

6 *Id.*

7 *Id.*

8 ECF 1, ¶ 6. Defendants' motion to dismiss is both an attack on the legal sufficiency of the complaint under Fed. R. Civ. P. 12(b)(6) and a facial attack on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1). Either way, the Court must assume the well-pleaded factual allegations of the complaint to be true. *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007).

9 *Id.* ¶ 1.

10 *Id.*

11 *Id.*

12 *Id.* ¶¶ 1, 3.

Defendants move to dismiss on two grounds: (1) the Court lacks subject matter jurisdiction over Plaintiffs' claims because BFDs are committed to agency discretion by law, and their request to be put on the waitlist is unripe until the BFD process is complete; and (2) Plaintiffs fail to state a claim that their application decisions have been unreasonably delayed under the APA.[13]

## II. DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Plaintiffs seek an order compelling USCIS to conduct either a BFD or waitlist determination on their applications.[14] Defendants attack the Court's subject matter jurisdiction to hear either claim, on separate grounds. As for the BFD, Defendants argue that the Immigration and Nationality Act (INA) strips the Court of jurisdiction, because whether to grant a BFD EAD is committed to agency discretion by law. As for the waitlist determination, Defendants argue that Plaintiffs' claims are unripe, because Plaintiffs have not had a BFD, which would determine whether a waitlist determination is necessary. While the Court agrees that it lacks jurisdiction to hear the BFD claim, it also concludes that the waitlist claim is ripe.

---

13 *See generally* ECF 6.

14 The parties do not clearly delineate between Plaintiffs' claims under the APA and the Mandamus Act, but since the analyses overlap, the Court will consider them together. *See, e.g.*, *Moreno v. Wolf*, 558 F. Supp. 3d 1357, 1363 (N.D. Ga. 2021); *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1379 n.1 (M.D. Ga. 2019) (same).

"Administrative action is presumptively subject to review by the courts." *Kanapuram v. Dir., US Citizenship & Immigr. Servs.*, 131 F.4th 1302, 1306 (11th Cir. 2025) (citing *Kucana v. Holder*, 558 U.S. 233, 251 (2010)). However, the presumption may be "overcome by 'clear and convincing evidence' of congressional intent to preclude judicial review." *Id.* (citing *Reno v. Cath. Soc. Servs., Inc.*, 509 U.S. 43, 64 (1993)). The INA expressly provides that some matters are not subject to judicial review, including, as Defendants suggest here, "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B)(ii).

**A. The Court lacks subject matter jurisdiction over Plaintiffs' BFD claims.**

The INA provision authorizing the BFD process is 8 U.S.C. § 1184(p)(6), which provides that USCIS "***may*** grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status under section 1101(a)(15)(U) of this title," *i.e.*, a U Visa application (emphasis added). The Supreme Court "has repeatedly observed that the word 'may' clearly connotes discretion." *Bouarfa v. Mayorkas*, 604 U.S. 6, 13 (2024) (collecting cases) (cleaned up). That said, the two circuit courts to interpret this provision have come to different conclusions. In *Gonzalez v. Cuccinelli*, decided after § 1184(p)(6) was enacted but

before the BFD process was implemented, the Fourth Circuit noted that "nothing in § 1184(p)(6) requires the agency to do anything," thus concluding that USCIS "has discretion in granting a particular work authorization and in adjudicating requests for work authorizations generally." 985 F.3d 357, 366, 368 (4th Cir. 2021). Therefore, "[t]he discretion afforded to the agency over how to address work-authorization requests means that consideration of every work-authorization request is not 'required,'" as would be necessary to compel agency action. *Id.* at 368.[15]

The Sixth Circuit came to a somewhat different conclusion in *Barrios Garcia v. U.S. Department of Homeland Security*, decided shortly after the BFD process was implemented, interpreting § 1184(p)(6) to "requir[e] [USCIS] to decide if an

---

15 To be precise, *Gonzalez*'s discretionary analysis was based on the Supreme Court's interpretation of 5 U.S.C. § 706(1)—the APA provision permitting courts to compel agency action unreasonably delayed, as Plaintiffs seek to do here—in *Norton v. Southern Utah Wilderness Alliance*, where the Supreme Court held that a § 706 claim "can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Gonzalez*, 985 F.3d at 365–66 (quoting *Norton*, 542 U.S. 55, 64 (2004)) (emphasis in original). Indeed, *Gonzalez* expressly declined to address whether 8 U.S.C. § 1252(a)(2)(B)(ii) independently stripped the court of jurisdiction. 985 F.3d at 367 n.4. But as can be seen above, *Gonzalez*'s discretionary analysis under *Norton* overlaps considerably (if not entirely) with the discretionary analysis under § 1252(a)(2)(B)(ii), and several judges in this district have considered it as such. *See, e.g.*, *Jiwani v. Dir. of U.S. Citizenship & Immigr. Servs.*, No. 1:25-CV-2847-MHC, 2026 WL 788945, at *6–*7 (N.D. Ga. Mar. 18, 2026); *Moreno*, 558 F. Supp. 3d at 1363–64.

application is 'pending' and 'bona fide' *before* the agency can wield its discretion to grant an applicant work authorization." 25 F.4th 430, 444 (6th Cir. 2022) (emphasis in original). *Barrios Garcia* "acknowledge[d] that § 1184(p)(6) might be read another way," as in *Gonzalez*, such that "[t]he term 'pending, bona fide application' merely sets forth a prerequisite that the agency must satisfy if it chooses, in its discretion, to conduct an adjudication." 25 F.4th at 444 (quoting *Gonzalez*, 985 F.3d at 371). Ultimately, though, *Barrios Garcia* stopped short of requiring USCIS to actually adjudicate the plaintiffs' BFD EADs: the court held that it could "require [USCIS] to adjudicate whether a U-visa application is bona fide if that decision is unreasonably delayed. But we cannot command [USCIS] to adjudicate Plaintiffs' prewaitlist work-authorization applications." *Id.* at 451. Thus, the distinction between *Gonzalez* and *Barrios Garcia* is of little practical significance to Plaintiffs, who seek the benefits afforded by a BFD EAD or placement on the waitlist, whichever can be obtained sooner.[16]

Along with several other judges in this district, undersigned agrees with *Gonzalez* in concluding that § 1184(p)(6) is discretionary and therefore does not

---

[16] The Ninth Circuit recently took up the issue of the U Visa waitlist and BFD process in *U Visa Appellants v. Director, U.S. Citizenship & Immigration Services*, No. 24-6824, 2026 WL 2683743, at *5 (9th Cir. Sept. 14, 2026). However, the plaintiffs there had all received either a BFD EAD or waitlist placement and were seeking an immigration benefit (parole) that Plaintiffs here are not. *Id.* at *1, 4. Thus, the *U Visa Appellants* case is of limited value here.

require USCIS to conduct BFDs. *See Jiwani v. Dir. of U.S. Citizenship & Immigr. Servs.*, No. 1:25-CV-2847-MHC, 2026 WL 788945, at *7 (N.D. Ga. Mar. 18, 2026) (collecting cases). Thus, 8 U.S.C. § 1252(a)(2)(B)(ii) strips the Court of jurisdiction to hear Plaintiffs' claim that their BFD has been unreasonably delayed. But even if undersigned were to follow *Barrios Garcia*, the Court has no jurisdiction to compel USCIS to adjudicate Plaintiffs' BFD EADs.

**B. The Court may exercise subject matter jurisdiction over Plaintiffs' waitlist placement claims.**

Defendants do not argue that the same provision strips the Court of jurisdiction to hear Plaintiffs' claim regarding their waitlist determination. Indeed, *Gonzalez* and *Barrios Garcia* both affirmed subject matter jurisdiction over this type of claim. *See Gonzalez*, 985 F.3d at 375 n.10 ("Unlike the requested work authorizations, Congress mandated that the agency pass implementing regulations for the U-Visa program, which it did. Similarly, unlike the pre-waiting-list work authorizations, the agency has committed itself by regulation to place eligible applicants on the waiting list.") (citations omitted); *Barrios Garcia*, 25 F.4th at 443 ("In short, waitlist adjudications are nondiscretionary per DHS regulations. Because no statute prohibits judicial review, § 701(a)(1) does not bar review of the Plaintiffs' waitlist claim."). Instead, Defendants argue that this claim is unripe, because Plaintiffs have not had BFDs, which in the BFD process would determine

whether waitlist determinations are necessary. Of course, the fact that Plaintiffs have not had BFDs is the reason that they brought this case in the first place.

"Article III of the U.S. Constitution restricts the ability of courts to review cases and controversies that are not ripe, 'reserving limited judicial resources for individuals who face immediate, tangible harm.'" *Carver Middle Sch. Gay-Straight All. v. Sch. Bd. of Lake Cnty.*, 842 F.3d 1324, 1329 (11th Cir. 2016) (quoting *Bowen v. First Fam. Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000)). This "ripeness doctrine keeps federal courts from deciding cases prematurely and protects them from engaging in speculation or wasting their resources through the review of potential or abstract disputes." *Lozman v. City of Riviera Beach*, 119 F.4th 913, 917 (11th Cir. 2024), *cert. denied*, 145 S. Ct. 2751 (2025) (quoting *United States v. Rivera*, 613 F.3d 1046, 1050 (11th Cir. 2010)). Under the ripeness doctrine, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." *Id.* (quoting *Rivera*, 613 F.3d at 1050).

Plaintiffs' request for a waitlist determination is sufficiently ripe for adjudication here. Plaintiffs have filed their applications. USCIS has committed itself by regulation to place eligible applicants on the waiting list. *See* 8 C.F.R. § 214.14(d)(2) ("All eligible petitioners who, due solely to the cap, are not granted U–1 nonimmigrant status ***must*** be placed on a waiting list and receive written

notice of such placement.") (emphasis added). All that is left is for USCIS to determine if Plaintiffs are eligible. There is nothing abstract about the fact that Plaintiffs have waited more than a year and a half for a decision.

True, by granting Plaintiffs their requested BFD EADs, USCIS would obviate the need to make a waitlist determination. However, as discussed previously, nothing in the INA or USCIS's own BFD process requires USCIS to actually conduct BFDs. By contrast, Congress mandated that USCIS implement the waitlist process, *see Gonzalez*, 985 F.3d at 362 (citing Violence Against Women and Department of Justice Reauthorization Act of 2005, Pub. L. No. 109-162, § 828, 119 Stat. 2960 (2006)), and USCIS's waitlist determination is likewise mandatory, but there is no requirement in either that the BFD be conducted first. Measured against the waitlist process's requirements, Plaintiffs' claims are ripe. As Judge Bucklo of the Northern District of Illinois recently observed, to hold otherwise could lead to "the perverse result that, by indefinitely delaying a decision on [a plaintiff's] request for a BFD--a decision-making process which . . . occurs without the possibility of judicial review—USCIS could insulate itself from ever having to make a waitlist determination, thereby granting itself the discretion the statutory scheme withholds." *Patel v. Noem*, 788 F. Supp. 3d 950, 956 (N.D. Ill. 2025). While there is no indication that that is the intent here, Plaintiffs' waitlist determination

claims are nonetheless ripe, and therefore the Court may exercise subject matter jurisdiction.

Accordingly, Defendants' motion to dismiss for lack of subject matter jurisdiction is granted as to Plaintiffs' BFD claims but denied as to their waitlist claims.

## III. DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Defendants also move to dismiss Plaintiffs' complaint on the ground that it fails to state a claim that their BFD or waitlist determinations have been unreasonably delayed. Because the Court previously concluded that it does not have subject matter jurisdiction to compel Defendants to conduct a BFD for Plaintiffs, this section is focused on Plaintiffs' request for a waitlist determination, though the BFD and waitlist processes are interrelated. At the pleadings stage, Plaintiffs' allegations permit the reasonable inference that Defendants have unreasonably delayed their waitlist determination.

To withstand a motion to dismiss for failure to state a claim, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[C]onclusory allegations, unwarranted deductions of facts[,] or legal conclusions masquerading as facts will not prevent dismissal." *Oxford Asset Mgmt., Ltd. v.*

*Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002). A complaint is plausible on its face when a plaintiff pleads facts sufficient for the court to draw the reasonable inference that the defendant is liable for the conduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting *Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1261 (11th Cir. 2006)). This principle, however, does not apply to legal conclusions. *Iqbal*, 556 U.S. at 678.

The parties both analyze the unreasonable delay claim using the six factors enunciated in *Telecommunications Research and Action Center v. Federal Communications Commission*, 750 F.2d 70, 80 (D.C. Cir. 1984) (the *TRAC* factors).[17] The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a "rule of reason";

[17] As many have pointed out, neither the Supreme Court nor the Eleventh Circuit have adopted the *TRAC* factors, though lower courts often use them to analyze unreasonable delay claims. *See, e.g.*, *Gonzalez*, 985 F.3d at 375; *Hidalgo Canevaro v. Wolf*, 540 F. Supp. 3d 1235, 1244 n.4 (N.D. Ga. 2021).

> (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
> (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
> (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
> (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
> (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 80 (cleaned up). In considering these factors, the Court bears in mind that "[a] claim of unreasonable delay is necessarily fact dependent and thus sits uncomfortably at the motion to dismiss stage and should not typically be resolved at that stage." *Barrios Garcia*, 25 F.4th at 451 (quoting *Gonzalez*, 985 F.3d at 375).

As to the first factor, USCIS's Policy Manual states that "USCIS prioritizes all petitions for adjudication of U nonimmigrant status under the statutory cap in the order they were received, ensuring older petitions maintain their priority over newer petitions," and "when U nonimmigrant visas become available each fiscal year, USCIS draws from both BFD recipients and waitlisted petitioners, in order

of filing date with the oldest filings receiving highest priority, to meet the statutory cap."[18] Defendants contend that this "first-in, first-out" process satisfies the need for a rule of reason. In response, Plaintiffs present evidence that a different U Visa application submitted on February 14, 2024 was granted a BFD EAD just three months later.[19] While not dispositive, this at least permits the reasonable inference that the BFD process is not strictly first-in, first-out, or that Defendants do not always adhere to this process. *See Barrios Garcia*, 25 F.4th at 453 (holding that "Plaintiffs have adequately alleged that no rule of reason governs the U-visa-adjudication process" based on similar allegations).

At the time of their response, Plaintiffs acknowledged that their current processing time was within the range in which 80% of similar petitioners receive a decision.[20] However, recent data suggest that Plaintiffs should expect a BFD or

---

18 3 USCIS Policy Manual, pt. C, ch. 7, § C., https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-7 [https://perma.cc/Y36N-VFLR] (current through Sept. 23, 2026).

19 ECF 7-1.

20 Plaintiffs reference a 39.5-month processing time, though according to USCIS's website that figure is currently 21.5 months. *See* USCIS, *Case Processing Times*, https://egov.uscis.gov/processing-times (select Form: "I-918 | Petition for U Nonimmigrant Status"; Form Category: "Petition for a noncitizen who is a victim of qualifying criminal activity, and their qualifying family members (Time from Initial Filing to Bona Fide Determination (BFD) Review)"; Field Office or Service Center: "Service Center Operations (SCOPS)" from dropdown menus; then click "Get processing time") [https://perma.cc/T3EJ-57KL] (last visited Sept. 24, 2026).

waitlist determination within 21.5 months of their application, which fell in approximately mid-August 2026.[21] Since there is no indication that any determination has yet been made, this further permits a reasonable inference that the BFD process is not strictly first-in, first-out, or that Defendants do not strictly adhere to this process.

As to the second factor, Plaintiffs acknowledge there is no statutory deadline for USCIS to make their BFD or waitlist determinations. However, Congress has expressed "the sense . . . that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). As Defendants point out, courts have generally held that this provision is nonbinding. *See, e.g.*, *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 51 (D.D.C. 2021). But surely it counts for something. *See Barrios Garcia*, 25 F.4th at 454 (citing § 1571(b)) ("[W]e are mindful that Congress has expressed that immigration-benefit applications should be adjudicated within six months.").

The third and fifth factors favor Plaintiffs. Though not actually alleged in their complaint, Plaintiffs argue that, without a BFD or waitlist determination, they are unable to work to support themselves, nor can they make long-term planning decisions, considering that they may or may not be permitted to remain in the

21 *Id.*

United States.[22] While Plaintiffs may not ultimately be entitled to BFD EADs or waitlist placement, along with the concomitant benefits, the delay certainly impacts their health and welfare.

The fourth factor weighs in favor of Defendants, with a caveat. There appears to be no dispute that the number of U Visa applications received by USCIS exceeds its ability to promptly adjudicate them—indeed, that is the reason for the BFD process. On its face, then, "a judicial order putting [Plaintiffs] at the head of the queue would simply move all others back one space and produce no net gain." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) (cleaned up). However, as discussed with the first factor, Plaintiffs' allegations permit the reasonable inference that Defendants are not proceeding in a strictly first-in, first-out fashion, and so it is not as simple as Plaintiffs would be moved forward in the queue at others' expense. Thus, at the motion to dismiss stage, this factor does not defeat Plaintiffs' claims.

Finally, there has been no suggestion of impropriety on Defendants' part, but that does not preclude the conclusion that Plaintiffs have experienced an unreasonable delay in the processing of their applications.

---

22 ECF 7, at 7–8.

Taken together, Plaintiffs have plausibly alleged that their applications have not been processed in the first-in, first-out order specified in USCIS's Policy Manual; they have waited longer than 80% of other U Visa applicants; and their health and welfare interests are at stake. Eventually, the evidence may show that the delayed processing of Plaintiffs' applications is reasonable. But at the pleadings stage, Plaintiffs have adequately stated their claim. Accordingly, Defendants' motion to dismiss for failure to state a claim is denied.

## IV. CONCLUSION

Defendants' motion to dismiss [ECF 6] is **GRANTED IN PART and DENIED IN PART**. Defendants' motion to dismiss for lack of subject matter jurisdiction is granted as to Plaintiffs' BFD claims but denied as to their waitlist claims. Defendants' motion to dismiss for failure to state a claim is denied.

Defendants are **ORDERED** to file their answer to the surviving portions of Plaintiffs' complaint within 14 days of this Order. The parties are **ORDERED** to file their Joint Preliminary Report and Discovery Plan required by LR 16.2, NDGa, within 30 days of Defendants' answer.

The Clerk is **DIRECTED** to submit this Order to undersigned after 60 days.

**SO ORDERED** this 28th day of September, 2026.

Steven D. Grimberg
United States District Judge